PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* JOSÉ MIGUEL NEGRÓN, Defendant and Appellant.

No. 3262.  Argued January 10, 1928.—Decided March 8, 1928.

R. *Martínez Nadal* and *Leopoldo Tormes* for the appellant.  *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was a case where the defendant for a long time had made love or sought to make love to Isabel Rodríguez. Apparently there came a time when his attentions were no longer welcome.  The mother of the girl, according to defendant, was opposed to him in every direction.  Nevertheless, the defendant, in pursuit of his object, haunted the house of Isabel Rodríguez in Ponce.  He went there on the first day of July, 1926.  On that day, while Isabel Rodríguez was preparing a chicken in her house, the defendant came and at different moments fired several shots at her, two of which at least might have been fatal and from the result of such shooting she died.  The defendant said that he had shot the girl and was prepared to kill himself if she died.

In a prosecution for murder the defendant pleaded not

guilty, but the main object of the defense was to show that the prisoner was insane. For the moment we purposely refrain from saying that the effort was to show that the defendant was not responsible for his acts at the time of the shooting because the first assignment of error turns somewhat on that point.

Specifically the first assignment of error is as follows:

"The court committed grave error, prejudicial to the defendant, in regulating the order of introduction of the evidence for the defense, in making statements before the jury that were prejudicial to the defendant, and in assuming to act for the prosecuting attorney during the trial of the case."

It is the law that the order of the evidence and the conduct of the trial rests in the sound discretion of the judge who sits in the case. The real complaint of the appellant is that when the prosecution had finished its case and before the defendant had begun to present evidence the court made certain comments on what should be the nature of the proof of insanity in a trial of this kind. Counsel for defendant, however, had made an opening address to the jury. While the defendant omitted to transcribe the remarks of his counsel to the jury on opening the defense, it is evident that he had made statements of what he intended to prove, which to the mind of the court involved an undue assumption of what would constitute the defense. The court has full power to call the attention of counsel, while addressing the jury, to what it believes to be the evidence; to correct counsel when he incorrectly states the law in his argument, or when he assumes a condition of facts not shown by the evidence; and to restrain and criticise him when he applies abusive and denunciatory language to the state's witnesses, or where he continues a certain line of argument against which the judge has ruled. 16 C. J. 830.

While the text and cases cited under it are more particularly applicable to the closing arguments made by

counsel, yet the reason of the law is the same for any address made by counsel to the jury. We cannot agree with counsel that the court must sit by and wait until it instructs the jury to correct supposedly incorrect statements made by counsel.

The court told counsel that the defense must be prepared to show, in accordance with the cases of *Fisher* v. *People*, 23 Ill. 218, and *People* v. *Messersmith*, 61 Cal. 246, 248, that before a man could be freed from responsibility it must be shown that he did not realize the consequences of his act. This we hold, in its main outline, to be a correct statement of the law.

Even if the court should have been slightly in error, yet the defense has failed to give us a complete record as showing what counsel said. At the trial, moreover, the defendant was allowed to go freely into the history of his life and to introduce experts on insanity. We find neither error nor prejudice.

There was considerable discussion between the court and counsel over the law, and the court at the time told the jury that it should not heed what the court said but fix its mind solely on the evidence. The injunction was repeated in the instruction. As in this record we find nothing harmful in the remarks of the judge, the case was not prejudiced.

The second and fourth assignments of error are as follows:

"2. The court erred in saying in its charge to the jury that it would give no instructions on voluntary manslaughter, but only on first and second degree murder, and that a verdict of voluntary manslaughter would not be admitted."

"4. The court committed an error very prejudicial to the defendant in refusing to instruct the jury, upon request in due time and form by the defendant, to the effect that a verdict of voluntary manslaughter could be found against the defendant in this case."

To maintain his position that the court ought to have given instructions on manslaughter, the defendant relies on the statement given by detective Daniel Pérez Sánchez on page 102 of the record and on the statement of Ramón

Martínez Chapel, a police captain, whose evidence is to be found on pages 168 and 169 of the record. We transcribe the two statements:

That of Daniel Pérez Sánchez is as follows:

"When we, the captain and I, were bringing him along the road we asked him what had caused him to kill this girl and then he said that three or four years ago he had had relations with her and that by reason of the opposition of her mother he had decided to kill her and to kill himself; that he had arrived at the house with a revolver in his pocket, in a pocket, and the cartridges in the other; that in her presence he loaded the revolver and shot several times; that afterwards when he saw her fall he tried to shoot but the revolver did not go off; then he ran away to arrive at the house of his parents and say goodbye to them and turn himself over to the police."

The statement of Ramón Martínez Chapel was as follows:

"Yes, Sir, when I arrived I asked him where was the revolver. He told me that he had lost it in a canebrake, and in fact he showed me a canebrake which could be seen from the offices of the hippodrome. I took him along in an automobile and carried him to the office of the fiscal and on the way he said: I wanted to kill this girl and kill myself because her mother opposed me in every direction (I am using his own words), and I wanted to shoot myself but the pistol did not work. If she dies I will kill myself."

We agree with the fiscal that there is nothing in this evidence which would entitle the defendant to instructions in regard to manslaughter. In point of fact, barring the question of insanity, the testimony tends to show that the killing of Isabel Rodríguez was deliberate and premeditated. The position of the court was justifiable by our decisions in *People* v. *Alméstico,* 18 P.R.R. 314, and *People* v. *Lassalle,* 18 P.R.R. 410.

The third assignment of error is as follows:

"The court erred in stating to the jury in its charge to them that the defense had admitted that the case was one of murder in the first degree, when no such admission had been made."

We can not agree with the fiscal that the defense of insanity is inconsistent with other defenses that the defendant might present. A man may not have done the shooting and still might be insane and could defend on either ground. However, the court was not mistaken. While Captain Chapel was testifying, as cited before on page 169, the question arose whether the statement of the defendant was voluntary or not, and counsel for the defendant said: "I think the statement was voluntary and I accept the testimony as my own." Along with other statements and positions of the defendant in the record, it was perfectly clear that the defendant accepted the facts of the killing and under the circumstances that the offense was murder.

The fifth assignment of error discusses the sufficiency of the evidence, but here again the defendant is relying on the failure of the evidence to show anything more than a case of manslaughter. The court gave full instructions in regard to insanity and we do not find that the jury was mistaken in weighing the evidence. The court, besides, gave the jury an opportunity to bring in a verdict of murder in the second degree, while we are inclined to think that the evidence pointed to a case of murder in the first degree.

We can not conclude this opinion without adverting to what was evidently a mistake of the court in giving instructions to the jury. On page 14 of the instructions the court told the jury that the presumption of innocence is in favor of the defendant while he is sitting in court, and then the court added: "But that presumption will disappear when you retire to the jury room. When I turn over the case to you, name the foreman, etc., and you go to the jury room it is then that the presumption of innocence disappears and you may discuss whether the defendant is innocent or the defendant is guilty." Then the court went on to say that

when the defense is insanity the defendant must show that fact by a preponderance of the evidence.

The statement about the disappearance of the presumption of innocence when the jury retires is totally erroneous. The presumption of innocence, whenever available, stands in favor of the defendant until the very moment of the rendition of a verdict. A jury must bear this in mind in the jury room at all times until a verdict is actually reached. We do not know what the court had in mind, but no exception was taken and apparently counsel knew the connection in which the remarks were uttered, perhaps by reason of the defense of insanity. In almost any other case we should feel bound to reverse. Given, however, that the presumption of innocence was overcome by defendant's own confessions, accepted by counsel, we find the error was in this particular case harmless.

The judgment should be affirmed.

Mr. Justice Texidor took no part in the decision of this case.

ON RECONSIDERATION.

Counsel for appellant asks for a reconsideration of our opinion inasmuch as he fears that some of its language might be understood as referring to some supposed undue conduct on his part in the trial of the case or in the brief.

We are quite agreed that the only commentable thing that happened was that counsel misstated the law in his opening address to the jury. The language that this court used, however, is an exact reproduction of 16 Corpus Juris, 830, to which reference is made in the opinion. It seemed to us that the citation was a correct exposition of the privileges or duties of the judge. We are also agreed that the court and counsel should be courteous to each other, but we see no failure on either side in this case.